Eleanor G. BOURQUE, et al., Plaintiffs,

v.

The CITY OF YONKERS and Deluxe Development of New York, Inc., Defendants. (Two Cases)

Nos. 91 Civ. 6787 (LBS), 91 Civ. 7605 (LBS).

United States District Court, S.D. New York.

May 18, 1992.

Harold, Salant, Strassfield & Spielberg (Leonard I. Spielberg, of counsel), White Plains, N.Y., for plaintiffs.

Johnston, Barton, Proctor, Swedlaw & Naff (Raymond P. Fitzpatrick, Jr., of counsel), Birmingham, Ala., for defendant City of Yonkers.

Squadron, Ellenoff, Plesent & Lehrer (Joseph R. Gagliano, Jr., of counsel), New York City, for defendant Deluxe Development of New York, Inc.

## OPINION

SAND, District Judge.

In these two cases, one of which has been removed from state court, 112 plaintiffs assert an entitlement to compensation because of an alleged taking of their rights under a restrictive covenant. This Court ruled that the state court case was properly removed to federal court. The two cases were thereafter consolidated with the consent of the parties. *See* Transcript proceedings, January 30, 1992 (hereafter "Tr."), p. 4.

Although plaintiffs initially sought some forms of injunctive relief with respect to the construction of a community center, on being advised that the community center was a requirement of HUD for the construction of public housing, plaintiffs withdrew this request for an injunction and seek only monetary relief. Tr. 7–8.

*The Restrictive Covenant*

At issue in this litigation are the rights of owners of land surrounding the site upon which there had been constructed the Whitman school (the "Whitman site"), which school was built in 1956 and thereafter operated by the Yonkers Board of Education ("YBOE"). On this site, public housing units have been constructed pursuant to this Court's Housing Remedy Order entered in *United States v. Yonkers Board of Education*, et al., 80 Civ. 6761 (LBS). Construction has been completed and the units are now being occupied.

The Whitman site and all of the surrounding land which plaintiffs own was at one time owned by Crest Brook Estates, Inc. ("Crest Brook"). On March 17, 1955, Crest Brook conveyed a portion of this land to Berkeley Homes, Inc., subject to a restrictive covenant limiting construction to single-family detached dwelling houses with no less than 15,000 cubic feet of living space. On February 20, 1956, Crest Brook conveyed a separate parcel of land, which included the Whitman site, to Clarge, Inc. ("Clarge"). The land conveyed by Crest Brook to Clarge was conveyed subject to the following restrictive covenant:

> The party of the second part [Clarge] covenants that single-family, detached dwelling houses only shall be built on the premises above described and that said houses shall each contain not less than 15,000 cubic feet of space, excluding garages, porches, crawl spaces and cellars, but including stories that are more than fifty (50%) percent above finished grade: provided, however, that *this covenant shall not apply to such portion of the land herein conveyed as may be acquired by the Board of Education of the City of Yonkers by gift, purchase or condemnation.*

(Emphasis added.)

On July 27, 1956, Clarge conveyed that portion of the land that it had acquired from Crest Brook that is now known as the Whitman site to the City without restrictive covenants. This acquisition was pursuant to Special Ordinance No. 175–1956 which was captioned "*A Bond and Capital Note*

*Ordinance authorizing the acquisition of certain lands for use as a site for the erection of a school in the Crestwood Lake Section of the City, appropriating $99,200 therefor ...*" Adopted by the City Council on June 12, 1956, the Ordinance ordains the "acquisition, for use as a school site in the Crestwood Lake section of the City of Yonkers ..." the lands described therein. No mention was made in the Ordinance of the YBOE.

After the City acquired the Whitman site, the YBOE took over possession and control of the land. The Walt Whitman School was constructed on the site and was operated by the YBOE for approximately thirty years. Plaintiff Bourque asserts in her affidavit in opposition to defendants' motion for summary judgment that "the part of the site on which the actual housing is being built was not used for educational purposes. It was a playground that was maintained, upon information and belief, not by the Board of Education, but by the City of Yonkers Department of Parks." Affidavit, ¶ 14. During this period of time, the YBOE paid any property taxes that were due on the Whitman site.

During the long and vexatious process of site selection for the 200 units of public housing which the City of Yonkers had obligated itself to build, the assumption was that the YBOE owned and controlled the site. Thus, § IV C(b) of this Court's Housing Remedy Order, May 28, 1986, provided:

"If this provision becomes operative by virtue of the failure of the City to designate alternative sites, the School Board [*i.e.*, the YBOE] is hereby ordered to return the Whitman site to the City."

According to the Order, the School Board could reserve rights to occupy space on the Whitman site for teacher training and library storage facilities.

On January 28, 1988, a consent decree was entered in which the Whitman site was designated as one of seven scattered sites upon which the 200 units of public housing

would be constructed. The housing consists of single family row houses, of a type sometimes referred to as town houses or garden apartments.

On July 24, 1990, this Court, acting pursuant to Rule 70 of the Federal Rules of Civil Procedure, directed the City to convey good and marketable title to the five sites at issue [including the Whitman site] to Deluxe Development [the successful bidder] immediately prior to signing of the turnkey contract of sale. The order provided that if the City failed to comply with the order to convey title, City title was nevertheless divested and title vested in Deluxe Development "and this judgment has the effect of a conveyance executed in due form of law."

The July 24, 1990 order also contained the following provisions:

3) It is further ORDERED that the City shall condemn any private easements inconsistent with the use of any of the above-named properties for public housing;

3(A) It is further ordered that the City shall convey title to the above named properties free and clear of any and all liens, encumbrances and/or clouds on title.

In further efforts to obviate impediments which appeared to be delaying execution of contracts and the commencement of construction of the public housing, this Court entered a further order on August 2, 1990, which, in pertinent part, directed the City to:

4. Remove the restrictive covenants on those portions of the Whitman School site which are currently restricted to use only for single-family detached housing.

Following entry of the August 2, 1990 order, the City raised a number of objections to the provision respecting restrictive covenants. The City advised the Court that the title insurance company had advised it that "merely to do the search to identify the proper parties to a proceeding to condemn any restrictive covenants would take 8 to 12 months."[1] Transcript

---

1. The 112 plaintiffs do not purport to be all of the parties who would allegedly have rights under the restrictive covenant.

November 8, 1990, Ex. K to Plaintiff's Affidavit, p. 23. This delay was, of course, totally unacceptable to the Court, anxious to clear the numerous road blocks, some real and some which appeared to be mere pretexts, which were being raised to delay construction of the housing. The upshot was that the Court accepted a consensus of the parties that the City be relieved of any order to commence condemnation proceedings to clear title to the restrictive covenants which might be encumbrances to the Whitman site, with the understanding and condition that the ultimate cost of any proceedings related thereto would be an obligation of the City. See Transcript proceedings, November 29, 1990, p. 42.

"The Court ... the court hereby vacates the provisions of the previous order which imposed on the City of Yonkers an obligation to institute condemnation proceedings ..."

During all of these discussions concerning these covenants, the parties made clear that they were not conceding the existence or applicability of any restrictive covenants or rights in third parties, but were leaving such questions to a later day should they arise, acting in a fashion which enabled the long delayed, urgently needed, housing construction to go forward.

With this background, we examine, in the context of the City's motion for summary judgment, on its behalf and on behalf of Deluxe Development, plaintiffs' allegations of inverse condemnation and a claim, pursuant to § 1983, of a taking in violation of due process.

*The Nature of Plaintiffs' Alleged Rights*

The threshold and controlling question on this motion is the determination of what rights, if any, plaintiffs acquired by virtue of the language contained in the Crest Brook conveyance to Clarge quoted at p. 1, *supra.* Plaintiffs urge that the resolution of that question turns on the intent of the transferror, that this raises a question of fact and that summary judgment should be denied so that the deposition may be taken of the transferror who is alive and well and living in the County. We agree that the critical question is the intent of the transferror but the question is his intent reasonably deduced from the language of the deed itself, not his subjective intent, not disclosed since 1956. Rights to real estate can not be based on so flimsy a foundation.

It is the plaintiffs' claim that

"the restrictive covenant, consistent with a common scheme or plan of development, did, initially at least, fully attach to all of the premises conveyed therein. Accordingly, the burden rests upon the City to show in what manner, beyond any question of fact, the general restrictive covenant was subsequently extinguished, terminated or otherwise removed from any portion of said premises, including that which became known as the Whitman site."

Supplemental Memorandum of Plaintiffs, p. 20. Plaintiffs further assert that the City can not discharge this burden because the site in question was not "acquired by the Board of Education of the City of Yonkers by gift, purchase or condemnation", the language contained in the covenant.

Thus, it is plaintiffs' contention that in 1956 there was a breach of the covenant because the property in question was not used for single family homes and was not excepted from the restriction because it was not acquired by the YBOE in the manner indicated in the covenant. Plaintiffs are emphatic in disclaiming any reversionary rights which were triggered by the events which occurred over thirty years later. Supplemental Memorandum of Plaintiffs, pp. 6–7.

We accept the fact that there was an obvious intent in 1956 to have a development of single family homes and a nearby school. There was excluded from the covenant the land which was to be used for school purposes. The absence of a deed to the YBOE is not critical because pursuant to N.Y.S. Education Law § 2557, the means by which a Board of Education acquires property for use as a school is by taking title in the name of the City.

N.Y.S. Education Law § 2557 reads:

"The board of education may purchase real property for any of the purposes authorized by law and shall take title thereof *in the name of the City* which shall hold said property in trust for the use of such school district and the City is hereby empowered to sell and convey the same when it deems it for the interest of such school district ..."

(Emphasis added).

There is no question that the land was acquired by the City "for use as a site for the erection of a school" as reflected in the June 12, 1956 Ordinance. Nor is there any question that the land was so used during the intervening years. We believe it is of no consequence that the abutting playground, an amenity of the school itself, is alleged to have been maintained by the Department of Parks. In fact, and in practice, the site was devoted to the Whitman School under the aegis of the YBOE.

It follows from this analysis that at no time after the June 12, 1956 Ordinance did the plaintiffs have any enforceable rights by virtue of the restrictive covenant since the land in question was excluded from the covenant.

The language in the covenant is a description of the land which is to be exempted, *i.e.*, the land to be used by the YBOE. *Cf. Board of Educ. v. Long*, 268 A.D. 1053, 52 N.Y.S.2d 323 (1945); *Board of Educ. v. French*, 8 Misc.2d 208, 166 N.Y.S.2d 181 (Sup.Ct., Special Term, Nassau Cty. 1957). We hold that the fact that the mechanism by which, under New York State Education Law § 2557, a school board acquires title, *i.e.*, through acquisition in the name of the City, does not defeat the obvious intent of the transferror, nor erase the long history of the premises.

Although, as noted, plaintiffs explicitly disclaim reliance on any theory of a reversionary right, we deem it appropriate to express the view that this concession is well founded. There is clearly no language of reverter in the deed and no such rights were conferred on plaintiffs or their predecessors in title. Since we find that plaintiffs lacked any such reversionary rights, we need not address whether they would give rise to any claims for monetary damages under the circumstances of this case. *Cf. Crane Neck Assoc. v. New York City/ Long Island County Serv. Group*, 61 N.Y.2d 154, 472 N.Y.S.2d 901, 460 N.E.2d 1336 (N.Y.), *cert. denied*, 469 U.S. 804, 105 S.Ct. 60, 83 L.Ed.2d 11 (1984) (injunctive relief denied on grounds of public policy).

Our conclusion that the Whitman site was not subject to the restrictive covenant since June 12, 1956 is dispositive of all other issues in these two cases.

Plaintiffs assert that they have suffered a taking of their property for which they are entitled to compensation. In this regard, they ascribe fault to the City for failing to propose an alternative site in lieu of the Whitman site and for failing to initiate condemnation proceedings. Obviously, the underlying premise for these claims is the existence of some property right in the plaintiffs which has somehow been taken when the land in question was utilized for public housing. Since we find that no such property rights existed at any time subsequent to June 12, 1956, all of plaintiffs' contentions must fail.

### Conclusion

Plaintiffs had no property interest arising by virtue of the restrictive covenant once the Whitman site was acquired by the City of Yonkers pursuant to the June 12, 1956 Ordinance which enabled the construction of the Whitman School operated by the YBOE. Title was acquired in the manner prescribed by New York State law for School Board land acquisitions. No material questions of fact are in dispute.

Defendants' motion for summary judgment is granted.

SO ORDERED.